CUTTING v. TAVARES, O. & A. R. CO. (FLORIDA CENT. & P. R. CO. et al., Interveners).

(Circuit Court of Appeals, Fifth Circuit. April 17, 1894.)

No. 212.

1. APPEAL—INSUFFICIENCY OF TRANSCRIPT.

An appeal will not be dismissed for insufficiency of the transcript where the records were burned while the case was pending below, and the transcript contains all the subsequent proceedings, and so much of the prior record as has been re-established, and no one of the several appellants was to blame for not fully re-establishing it.

2. MORTGAGES—PAYMENT OF COUPONS.

A decree of foreclosure provided, in accordance with the terms of the mortgage, that the purchase money should be applied "first to the payment in full, if it be sufficient, or, if not, to the payment, pro rata, of all defaulted coupons" belonging to the bonds secured, and the balance, if any, to payment of the bonds. Held, that a decree of distribution of the proceeds of the sale which directed a pro rata payment on the bonds themselves, before paying the interest coupons due, was erroneous.

3. SAME—CREDITS.

Where the decree confirming a mortgage sale allows the purchaser a credit by reason of a certain receipt filed by him, it is error to reject such credit in the subsequent decree distributing the proceeds of sale.

4. SAME—CLAIMS PRIOR TO RECEIVERSHIP.

Upon the sale of a railroad on foreclosure, it is error to direct payment of claims for supplies furnished prior to the receivership out of the purchase money, where no provision was made for such payment when the receiver was appointed, and there is no evidence that current earnings, before or after his appointment, were diverted to paying interest on the bonded debt.

5. SAME—TAXES ON FORECLOSURE.

The purchaser of property on foreclosure is entitled to a credit for taxes paid by him only where the taxes were a lien on the property; and where the date of the assessment does not appear, that being the date when the lien attaches (Sess. Acts Fla. 1887, Act. No. 1, § 42), it cannot be said that the refusal to allow him such a credit is error.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

This was a suit for foreclosure by William Bayard Cutting against the Tavares, Orlando & Atlantic Railroad Company, in which the Florida Central & Peninsular Railroad Company intervened. From certain decrees made in the cause, the interveners appeal.

William Bayard Cutting, as trustee, brought suit in the circuit court against the Tavares, Orlando & Atlantic Railroad Company to foreclose a mortgage on thirty-two miles of road in Orange county, state of Florida. The mortgage was given to secure the payment of two hundred and fifty-six (256) bonds of one thousand dollars each, with interest at eight per centum per annum. Such proceedings were had in said suit that on the 24th of December, 1890, a decree of foreclosure and sale was rendered. The decree provided, among other things, as follows: "At the conclusion of the sale, all deposits shall be returned except the deposit of the bidder to whom the property shall be struck off, and he shall have credit for the amount thereof, as a payment in cash on account of the purchase price. In addition to the said deposit of ten thousand dollars, so much of the purchase money as shall be necessary to pay off all obligations, if any there be, incurred by the receiver under the orders of this court, which shall then have come due and payable, shall be paid in cash, and the receiver is hereby ordered to furnish to the master, at least five days before the sale, a sworn statement of

all such obligations, and of all other outstanding contracts made and obligations incurred by the receiver under the orders of this court, and not then paid off or discharged, subject, however, to revision by the court, at the suggestion of complainant, and the purchaser shall take the property, subject only to the performance of the contracts and the payment of the obligations so stated; and the amount of the purchase price to be paid in cash shall be fixed by the master, and shall be announced by him at the time of the sale, and the cash payment, including the said ten thousand dollars, shall be deposited by the master in the National Bank of Jacksonville, to the credit of this cause, subject to be drawn out by the master on his check; and out of the funds so deposited the master shall pay the costs, fees, allowances, and compensation herein provided for, or which may hereafter be allowed by the court, and the said obligations of the receiver which shall have become due and payable; and, upon the confirmation by the court of such sale, the residue of the purchase price shall be paid to the master within thirty days thereafter, at a place to be appointed by him at the time of the sale, either in cash, or, at the option of the purchaser, in bonds of the defendant above described, and in interest coupons belonging to said bonds, such bonds and coupons, if such sale be for less than the amount due thereon, to be taken as equivalent to so much of the said purchase money as would be distributable and payable thereon. All bonds and coupons so received by the master in lieu of cash, unless thereby paid in full, shall be stamped with a statement of the amount of the purchase price thereby paid. which amount shall be deemed and held to be a payment on account of the amount due such bonds and coupons; and the said bonds and coupons, after being so stamped, shall be returned by the master to the parties presenting the same. All bonds and coupons paid in full shall be stamped accordingly or otherwise canceled by the master, and delivered by him to the defendant. * * * It is further ordered, adjudged, and decreed that the master pay out of the proceeds of such sale the amounts which shall hereafter be fixed and allowed by the courts for his fees and the expenses of sale, the costs of this suit, the expenses and compensation of the receiver, the compensation of the complainant, W. Bayard Cutting, for his services as trustee, the allowances to counsel and solicitors; and out of the surplus, if any, the master shall pay all obligations incurred by the receiver under the orders of this court, which shall have become due and payable, and shall have been announced by the master at the time of the sale as aforesaid; and shall apply the residue of this surplus, if any, first to the payment in full, if such residue be sufficient, or, if not, to the payment, pro rata, of all the defaulted coupons belonging to the said bonds, and the interest thereon hereinbefore adjudged to be due and payable, together with interest on the amount thereof from the date of this decree to the time of payment by the master, at the rate of 8 % per annum, and the interest hereinbefore adjudged on the principal of the said bonds and accrued since June 4, 1888, and interest thereon from the date of this decree, to the time of payment by the master, at the rate of 8 % per annum; and, secondly, to the payment in full, if such residue be sufficient, or, if not, to the payment, pro rata, of the principal of the said bonds; and, if afterwards any surplus remain. the master shall pay the same into court, subject to the further order of the court." Sale was made under the said decree on the 2d day of March, 1891, and the properties were purchased by the Florida Central & Peninsular Railroad Company, through its agent, for the sum of one hundred and seventy-six thousand dollars ($176,000). On the 14th of April following, the court rendered a decree confirming said sale, wherein, after reciting the sale of the properties and the bid of the Florida Central & Peninsular Railroad Company for the sum of $176,000, it was further recited: "And it further appearing that the bid so made was preceded by a deposit of ten thousand dollars by the said Florida Central and Peninsular Railroad Company as security that the said bid would be made good, and that it was the highest and best bid therefor, and that the said purchaser has made a further payment to the said master as follows: In cash, the sum of ten thousand one hundred and sixty-eight 86/100 dollars; the receipt of Florida Central & Peninsular Railroad Company, as successors to the right of the receiver of the Florida Railway & Navigation Company, on traffic balance, the sum of ten thousand three hundred and sev-

enty-one and 46/100 dollars ($10,371.46); the receipt of the Rogers Locomotive & Machine Works for engines, &c., twelve thousand seven hundred and ninety-five 61/100 dollars ($12,795.61); the receipt of the Pullman Palace Car Company for equipment, fourteen thousand two hundred and five 23/100 dollars ($14,205.23); notes of the receiver, principal and interest, amounting to the sum of thirty-eight thousand nine hundred and twenty-three and 22/100 dollars ($38,923.22); and, for the assurance of the payment of a part of the balance of said purchase money, has filed with Philip Walter, master, the evidence that said purchaser, the Florida Central and Peninsular Railroad Company, is the owner of and is possessed of two hundred and twenty-two (222) of the two hundred and fifty-six (256) one thousand dollars ($1,000) bonds, with attached coupons of the said defendant company, which it is ready to file with the master in the further proceedings to be had under this decree; and that, as to the rest and residue of said purchase money, the same shall be paid as is hereinafter provided." And it was ordered and adjudged as follows: "And it is further ordered, adjudged, and decreed, that it be referred to Philip Walter, Esq., as master of this court, to call in, upon giving thirty days' notice by publication in the Tribune, published in Jacksonville, Florida, weekly, for four (4) weeks, all of the outstanding bonds and coupons of the said defendant company, and that said master do make and report the application of the proceeds of the sale of said railroad property of the defendant company, other than as herein allowed, as aforesaid, to the said purchaser on the receipts as filed as follows: First. The costs of this proceeding, including an allowance to the master for his proceedings under said decree, the amount to be settled on coming in of his final report; and the compensation to the complainant, as trustee, one thousand dollars (1,000.00); to Burrill, Zabriskie & Burrill, complainants' solicitors, two thousand dollars (2,000.00); to T. L. Clark, complainants' solicitor, twelve hundred and fifty dollars (1,250.00); to Joseph H. Durkee, receiver, as per agreement, twenty-seven hundred and fifty dollars (2,750.00). Second. And to the intervening petitioners reported by the receiver in his report of January 29th, 1891, amounting to eight thousand nine hundred and twenty-seven and 63/100 ($8,927.63), or to such of them as upon investigation before said master shall be ascertained to come within the provisions of the terms of the amended decree herein filed, with privilege to the purchaser to contest before the master and before this court on the report of the master any and all of such claims. And it is further ordered and decreed that the said master ascertain and report the amount payable on each coupon and bond so filed with him, and that upon so ascertaining the amount to be due hereunder to each party filing either bonds or coupons of said defendant company with the master in the limit of time as aforesaid, the said purchaser shall forthwith pay to said master the balance due on said purchase, after making allowance for the payments as already made, and after allowing to him the proportionate value of such bonds and coupons as shall be so filed by the said purchaser."

On the 23d of May, at the same term of the court in which the foregoing decrees were rendered, W. C. Lewis, alleging himself to be the owner of twenty (20) of the bonds under the issues secured by the mortgage, by intervening petition, attacked the ownership of nineteen (19) of the two hundred and twenty-two (222) bonds tendered by the purchaser towards payment of the part of the balance of his purchase money, alleging that said bonds belonged to the defendant railroad company, never having been issued in such a way that the railroad company parted with its ownership. The Florida Central & Peninsular Railroad Company appeared and answered said intervening petition, asserting that only 16, and not 19, of the bonds were involved, and asserting that the bonds had been issued by the company to the Pullman Palace Car Company as collateral, and that, upon default, they had been sold; and claiming that the Florida Central & Peninsular Railroad Company held said bonds as proper outstanding obligations of the defendant railroad company, and was entitled thereon to participate in the distribution of the purchase money. The intervening petition and answer were referred to a master, who reported that the 16 bonds were deposited as collateral security with the Pullman Palace Car Company, that the Pullman Palace Car Company had been paid out of the funds arising from the sale of the prop-

erty, and that, therefore, the said bonds should not participate in the distribution of the property of the defendant company. This report was excepted to by the Florida Central & Peninsular Railroad Company on the ground that the report was not sustained by the facts in the case. Thereupon, on the 23d day of February, 1892, the court rendered a decree to the effect that the 19 bonds of the defendant company presented and filed in the cause of the Florida Central & Peninsular Railroad Company were not legally outstanding in the hands of said company, and that said company was not entitled to share in the proceeds of the sale of the property of the said company on account of such bonds, or any of them, and the clerk of court was ordered to cancel the said 19 bonds, and each of them, by writing across the face thereof the words, "Canceled by order of court." Thereafter, on the 29th of March, 1892, at the same term, the Florida Central & Peninsular Railroad Company filed a petition for a rehearing in the matter of the nineteen bonds, alleging that the order of cancellation was made altogether upon an erroneous impression of the facts as they exist; and thereupon setting out alleged facts showing that the bonds pledged to the Pullman Palace Car Company to secure the payment of a car-trust debt were bonds which had been duly issued by the company, and belonged to Messrs. Peck Bros., who, as large stockholders, were interested in maintaining the credit of the company. Upon this petition for a rehearing, the court entered an order as follows: "This petition coming on to be heard, the petitioner is allowed to file his petition as prayed for, which, being done, is referred to Ph. Walter, Esq., for examination and report without delay. [Signed] Charles Swayne, Judge. Done in open court this March 29th, 1892." On May 4, 1893, it appears the special master made a report in the nature of a general report, reciting the fact of sale, and as to the amount paid by the purchaser, and bonds surrendered in compliance with his bid, reported as follows:

| | |
|---|---:|
| "Amt. deposited by purchaser before sale..................... | $10,000 00 |
| Amt. deposited by purchaser since.......................... | 7,418 86 |
| Receipt of Rogers Locomotive Works....................... | 12,795 61 |
| Receipt of Pullman Palace Car Company................... | 14,205 23 |
| Receiver's notes amounting to............................. | 38,923 22 |
| Receipt of Joseph H. Durkee, Receiver, for compensation.... | 2,750 00 |
| | |
| Making a total of.................................. | $86,092 92 |

"The purchaser also filed two hundred and twenty-two of the bonds of the defendant company, 19 of which have since been declared not to be a lien on the property of the defendant corporation, leaving 203 bonds that have been deposited by the company. Out of the cash deposit of $17,418.86 I have paid claims amounting to $14,292.12, leaving a cash balance of $3,126.74. I would recommend that the following accounts, which are being vigorously prosecuted before me as master, be paid, to wit: H. Drew & Brother, $19.80; C. A. Boone & Company, $41.54; Standard Oil Company, $249.90; Valentine & Company, $110.24,—and that all other claims be turned over to the F. C. & P. R. R. Company, to dispose of as to them may seem just and proper, the parties having had two years in which to prove these claims. I would further recommend that the coupons filed by the Merchants' National Bank be paid for their face value, and that the balance of the fund, after paying any legal costs that there may be outstanding, be distributed, pro rata, among the 237 bonds declared to be a valid lien against the property; and that the purchaser pay into the registry of the court eighteen hundred and forty-three dollars and fifty-five cents, to be distributed in like manner, being the moneys turned over to them by the receiver, he, the said receiver, having been paid his allowance out of the sale of the property."

Exceptions were filed to this report by the Florida Central & Peninsular Railroad Company, purchaser, and by W. C. Lewis and others, bondholders, which exceptions coming on to be heard, the court ordered the report recommitted, and the matter referred back to the master. Thereafter, on June 10, 1893, the special master submitted another report, and thereafter, on June 14, 1893, an additional report, and thereafter, on June 19, 1893, a still further report. These three reports cover, to a large extent, the matters in controversy with regard to the payment of the purchase price of the Tavares, Orlando & Atlantic Railroad, the deductions therefrom authorized to be made,

the balance' due by the purchaser, the claims of interveners, the contested holding of twenty-six bonds, the proper distribution of the balance of the purchase money, and the compensation of the master. The Merchants' National Bank, claiming to be the holder of coupons, but not of bonds, appeared, and excepted to the report of June 19, 1893, on the ground that the coupons for past-due interest were entitled to be paid in full prior to anything being paid upon the bonds themselves. The Florida Central & Peninsular Railroad Company, purchaser, excepted as follows: "* * * To so much of the said master's report, herein filed on the 19th day of June, A. D. 1893, as reports that there is due from said purchaser, the Florida Central and Peninsular Railroad Company, the sum of $10,601.81, to be distributed as therein stated as per Schedule A attached to said master's report aforesaid. (2) And further excepts to so much of said report as reports that there should be distributed to the Merchants' National Bank for its coupons the sum of $422.57. (3) And further excepts to so much of said report as reports that there should be distributed and paid to Adams & Co., on bonds and coupons (11), the sum of $4,041.40. (4) And further excepts to so much of said report as reports that there should be distributed to Geo. A. Lewis, for 20 bonds, $7,348.00. (5) And further excepts to so much of said report as reports that there should be distributed and paid to John G. Sinclair, 2 bonds, $734.80. (6) And further excepts to so much of said report as reports and asks that final compensation of said master be fixed at the sum of $4,415.00 for the sale of road,—2½ %. (7) And further excepts to so much of said report as reports and asks that there be allowed said master, for nearly three years' services as master, and the various and numerous reports thereunder, and the many special references, the sum of $1,500.00." Thereafter, on the 8th day of November, the court rendered a decree overruling all exceptions to the master's report, confirming the said report, and ordering the Florida Central & Peninsular Railroad Company to pay into the registry of the court, within 30 days, the sum of $10,801.81, and directing the master to make distribution of said sum in accordance with the report.

From this decree, and from each and every order and decree in said cause since the decree of confirmation of sale, the Florida Central & Peninsular Railroad Company appealed. The Merchants' National Bank appealed from the decrees rendered on the 16th day of August, 1893, and on the 8th day of November, 1893. W. C. Lewis and John G. Sinclair, styling themselves defendants in the cause, appealed from the order entered on the 15th day of June, 1893, also the order entered on the 7th day of June, 1893, and also on the 8th day of November, 1893; and each of said appellants assigned, at more or less length, errors relied upon to reverse or amend the decrees appealed from, all of which are considered in the opinion of the court.

H. Bisbee, John A. Henderson, and John C. Cooper, for appellants.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge (after stating the facts). A motion was made to dismiss the appeals in this case on the ground that the certificate of the clerk of the circuit court to the transcript of record is insufficient. The certificate of the clerk, appended to the transcript, is:

"That the foregoing papers, numbered from 1 to 215, both inclusive, is a true, full, and complete transcript of so much of the said record, papers, exhibits, and proceedings in the said cause of W. Bayard Cutting, as trustee, v. The Tavares, Orlando and Atlantic Railroad Company as now appears, and is of file and of record in my office; said transcript being true and correct copies of the originals of the several papers, proceedings, depositions, files, and orders therein contained, as they now are of file and of record in my office."

The certificate does not comply with the requirements of rule 14 of this court (47 Fed. vii.), and as the record itself is in a very un-

satisfactory condition in regard to showing all the proceedings that were had in the circuit court in the case in hand, and necessary for our consideration, we would be disposed to dismiss the appeals, were it not for the fact that the record shows that the records in said cause were destroyed by fire on May 19, 1891, and what is now presented as so much of the said record, papers, exhibits, and proceedings is necessarily all the record prior to May 19, 1891, which has been re-established, and such proceedings as have been since had in the cause, and we are unable to lay upon any one of the appellants in this cause the fault of not fully re-establishing the record. The decree of foreclosure rendered December 24, 1890, was a final decree, which settled between the parties the rights therein adjudicated. As by that decree, in pursuance of the terms of the mortgage, it was provided that, after paying out of the proceeds of the sale the court costs and expenses, including compensation to the complainant and his counsel, and the obligations incurred by the receiver under orders of the court, "the residue of the purchase money should be applied first to the payment in full, if such residue be sufficient, or, if not, to the payment, pro rata, of all the defaulted coupons belonging to the said bonds, and the interest hereinbefore adjudged to be due and payable, together with interest on the amount thereof from the date of this decree to the date of the payment by the master, at the rate of 8 per cent. per annum, and the interest hereinbefore adjudged on the principal of the said bonds, and accrued since June 4, 1888, and interest thereon from the date of this decree to the time of payment by the master, at the rate of 8 per cent.," it follows that the decree of distribution appealed from in this case was erroneous in so far as it provided for a pro rata payment upon the mortgage bonds before paying the interest coupons and interest due. The decree of confirmation rendered on the 14th of April, 1891, was a final decree, settling the rights and obligations of the purchaser so far as they were therein adjudicated. As by that decree a credit was allowed to the purchaser for the sum of $10,371.46, on account of the receipt of the Florida Central & Peninsular Railroad Company as the successor to the right of the receiver of the Florida Railway & Navigation Company on a traffic balance, it follows that the decree of distribution appealed from, in so far as it rejected a credit to the purchaser of said sum of $10,371.46 traffic balance paid, was erroneous. The decree of the 23d day of February, 1892, declared that 19 bonds of the defendant company, filed in the cause by the Florida Central & Peninsular Railroad Company, are not legally outstanding in the hands of the said company, and not entitled to share in the proceeds of the sale of the property, and that the same should be canceled, was not and never became a final decree, because, at the same term, on petition of the Florida Central & Peninsular Railroad Company, the court allowed a petition for rehearing to be filed, and referred the same to a master for report, and adjourned the term of court, leaving the matter open. Goddard v. Ordway, 101 U. S. 748; Smelting Co. v. Billings, 150 U. S. 35, 14 Sup. Ct. 4. The evidence shows that the eight bonds pledged by the defendant railroad company to the Rogers Locomotive Works, as collateral security to a

car trust, were never lawfully acquired by the Florida Central & Peninsular Railroad Company, but remained from the beginning the property of the defendant railroad company, and, as such, were not legally outstanding, and entitled to share in the distribution of the proceeds of sale. In this respect we find no error in the decree appealed from.

The Florida Central & Peninsular Railroad Company assigns as error the allowances made to the master as commissions on the sale, and as compensation for other services. As, on the face of the record, the allowances complained of appear to be excessive, particularly in view of the character of the work as exhibited by the transcript, and as the case must necessarily be remanded and another reference ordered, and largely because there is no sufficient master's report in the record, we are of the opinion that the parties who are to be required to pay the apparently excessive allowances should be allowed the right to regularly contest the same. The decree appealed from requires the purchaser to pay into court the sum of $1,843.55, being the moneys alleged to have been turned over by the receiver to said purchaser, the said deceiver having been paid his allowance out of the sale of the property. There is no evidence in the record tending to show whether this item is properly chargeable to the purchaser or not. The record shows that in July, 1891, the receiver turned over to the purchaser the sum of $1,843.55, cash. Whether this was for earnings of the road subsequent to the sale, or for earnings prior thereto, does not appear, and we are unable to determine whether or not the purchaser should account for such sum.

The Florida Central & Peninsular Railroad Company further assigns as error that numerous small claims allowed to be due by the defendant the Tavares, Orlando & Atlantic Railroad Company, for supplies furnished prior to the appointment of the receiver under the bill for foreclosure, were allowed by the court, and ordered to be paid out of the proceeds of the corpus of the property. As the court in appointing the receiver made no provision for the payment of such claims, and as there is no evidence in the record tending to show that current earnings, either before or after the receiver was appointed, were diverted to paying unearned interest, or, in fact, any interest, upon the bonded debt, we are unable to sanction the order authorizing the payment of said claims from the proceeds of the sale of the property. See Fosdick v. Schall, 99 U. S. 235. It is also contended that the purchaser should be allowed a credit for the amount of the taxes due on the property for the year 1891. Whether the taxes for that year on the property purchased by the Florida Central & Peninsular Railroad Company should be paid by the purchaser, or out of the funds derived from the sale, depends upon whether or not the said taxes were a lien upon the property at the time of the sale. The statute of the state of Florida, in relation to this matter (Sess. Act 1887, Act No. 1, § 23), provides that:

"The assistant assessor shall begin the assessment of property on the 1st of January and complete the same as early as possible, and he shall return his list of assessments, so made out, to the county assessor immediately upon the

completion thereof, and not later than the 1st of May, and the two shall then revise such list at such stated time or times before the 1st day of June as the county assessor may designate, and make such changes as may be agreed upon between them as to descriptions or values of property."

Section 39 of the same act provides "that all taxes shall be due and payable on and after the 1st Monday in October of each and every year;" and section 42 provides "that an assessment of taxes shall be a lien upon the property assessed from the date of the assessment."

The record in this cause does not show facts sufficient to enable us to determine when, in and for the year 1891, the property of the Tavares, Orlando & Atlantic Railroad Company was assessed, nor the time the lien for said taxes attached. The sale of the property was made on the 2d day of February, 1891, and was confirmed by the court on the 14th of April, 1891. Under the law, the assessment may have been made after the sale of the property, and even after the decree of confirmation. It is contended on the part of Lewis et al., appellants, that the court below erred in overruling the exceptions of Lewis and Sinclair to the master's report, refusing to charge the purchaser, the Florida Central & Peninsular Railroad Company, with interest on the balance of the purchase price remaining unpaid. The record shows that on the 1st of March, 1892, on the petition of William C. Lewis and Adams & Co., the court ordered that the Florida Central & Peninsular Railroad Company be required and ordered to pay into the registry of the court, on or before the 10th day of March, 1892, the sum of $150,000, or show cause on or before that date why it should not do so. The decree of the court confirming the sale rendered on the 14th day of April, 1891, giving credit to the purchaser for the amounts of cash, and credits equal to cash, paid in by the master on account of the purchase, shows no such sum as $150,000 to be due from the purchaser. The case made by the record does not appear to be one in which the purchaser has been so put in default for nonpayment of the purchase price that interest should be exacted, even if such remedy is available against the purchase under the terms of the decree of confirmation.

We have considered all the questions presented by the assignments of error on the appeals in this case. Our conclusion is, and this court orders and decrees, that the decrees of the circuit court rendered on June 7, 1893, June 15, 1893, August 16, 1893, and November 8, 1893, be, and they are, reversed, and this cause is remanded, with instructions to refer the same to a master to report (1) the amount due and unpaid by the Florida Central & Peninsular Railroad Company on account of the purchase of the Tavares, Orlando & Atlantic Railroad properties, in accordance with the decree of April 14, 1891, and consistent with the views herein expressed, and as equity may require; (2) a schedule of distribution of the proceeds of sale in accordance with the provisions of the decree of foreclosure and sale rendered December 24, 1890, consistent with the views herein expressed, and as equity may require; (3) to take evidence and report on the claim of Philip Walter, Esq., for compensation for

services. rendered in the progress of the cause as special master and master commissioner. The costs of the appeal and of this court are ordered paid out of the fund in the cause.