## BROWN et al. v. KING et al. (two cases).

### (Circuit Court of Appeals, Fifth Circuit. May 29, 1894.)

#### Nos. 224, 225.

EQUITY PRACTICE—MASTER'S FEES.

The permanent master appointed in two suits to foreclose mortgages on a railway was a young man, not a lawyer, and without experience in railway accounts. The suits were not contested, and no matter of importance was litigated before him. His office expenses had been paid, and he had received $6,000 on account of his compensation. The principal part of his work was done by the receiver's auditor, to whom was allowed therefor more than $3,000. The master and the clerk of the court were appointed commissioners to sell the property, which was purchased at the upset price, $500,000, and each received $6,500 as commissions. His services extended very little over two years, during which he was absent five months or more; and he was also master in another railway foreclosure suit. *Held*, that his application for further compensation should be denied.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

This was a petition by John King, permanent master in two suits for foreclosure of mortgages against the Florida Southern Railway Company, for allowance of further compensation to him as such master. The circuit court made a decree allowing such further compensation. Brown and others, members of the committee who had purchased the property, appealed.

T. M. Day, Jr., for appellants.
E. P. Axtell, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge. On March 18, 1890, the New England Trust Company and the American Loan & Trust Company exhibited their respective separate bills against the Florida Southern Railway Company in the circuit court for the northern district of Florida, seeking to foreclose mortgages held by them on the property of the railway company. A receiver was appointed to hold and operate the property, and the usual proceedings were had in the progress of the suits. On May 7, 1890, John King, the ap-

pellee, was appointed permanent master in each of the suits, "to do and perform all those things proper to be done by a master, to take evidence, and report on such questions and matters as should be referred to him." The suits were not contested. Decrees pro confesso were taken. The permanent master seems to have in some way passed on the reports and vouchers of the receiver as the same were prepared by the receiver's auditor, J. E. Starke, and presented to the court; and this auditor, besides his pay as auditor of the receiver, was allowed $125 a month for 26 months as an expert accountant to assist the permanent master in passing on the receiver's accounts and vouchers. The permanent master's office expenses, including the services of a stenographer, seemed to have been paid by the receiver, on the proper decree of the court. No matters of great pith and moment appear to have been litigated before the permanent master. He was not a practicing or licensed lawyer. He was 28 years old when appointed. Before his appointment his business was that of a civil engineer. He had never served as master, or been in any way connected with courts, nor had any experience with railway accounts before his appointment. The final decrees of foreclosure were entered December 9, 1891. The appellee John King, and Phillip Walter, the clerk of the court, were appointed master commissioners to sell the mortgaged property. It was sold on March 7, 1892, to the appellants, as a purchasing committee, for the upset price, amounting to $500,000. April 9, 1892, the sales were confirmed, and on the 30th April the proper deeds were delivered, and the property taken possession of by the purchasers. Final reports of the receiver were filed September 1, 1892. Pending the proceedings, the appellee John King received on account of compensation as master the sum of $6,000, and received as his share of commissions for making sale of the mortgaged property $6,500, making, as his compensation for service rendered in the suits, $12,500. On April 23, 1893, he made application to the court praying for an order fixing his further compensation, which resulted in the passing of the decree appealed from, allowing him in each suit the sum of $1,250 in addition to the amounts previously paid him. In suits in equity the allowance of compensation to masters is so largely a matter of discretion in the judge of the court of original jurisdiction that courts of error are reluctant to disturb such decrees as those appealed from in these cases. The discretion, however, is a legal discretion, and it may be so improvidently exercised as to devolve on the court of appeals the duty of reviewing it. Unpleasant as it must always be to reverse the decrees of the circuit courts in such matters, we have been constrained to do so in a recent case,[1] and feel compelled to the same course in this case. If the decrees appealed from are affirmed, this young, inexperienced man will receive from this trust fund $15,000 for a period of service extending very little over two years. During 26 months of that time the principal part of his work appears to have been done by an assistant, who was an experienced man in such work, and for whose services there was paid out of this trust more than $3,000. In the most responsible work the master did he was

[1] Cutting v. Tavares, O. & A. R. Co.. 9 C. C. A. 401. 61 Fed. 150.

assisted by the clerk of the court as a co-worker, who was paid out of the trust $6,500 for his assistance. It is shown that during this period of something over two years the appellee was absent from the state of Florida for five months or more, and that he was also master in another railway foreclosure suit. It is stated in the brief of counsel for appellants, and not controverted by the counsel for the appellee, that "after the date of the deeding of the properties to the purchasers, but during a considerable portion of the time in which Mr. King claimed to be rendering services in the cause, he was also acting as master in the case of The American Construction Company v. The Jacksonville, Tampa & Key West Railway Company, and on May 1, 1893, he was appointed master in the case of The Pennsylvania Company for Insurance on Lives and Granting Annuities v. The Jacksonville, Tampa & Key West Railway Company." We refrain from further comment. We conclude that the decrees appealed from must be reversed, and the appellee John King's application for additional compensation as such permanent master denied, and the application dismissed, at his cost in the circuit court and in this court; and it is so ordered.